UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARY CUSACK, et al.,<br>              Plaintiffs,<br><br>   v.<br><br>IDAHO DEPARTMENT OF<br>CORRECTIONS, et al.,<br>              Defendants. | Case No. 1:11-cv-00303-REB<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

### INTRODUCTION

This case originates from an unfortunate event. Scott Hernandez, the father of Plaintiff C.L.C., committed suicide on October 2, 2010, while in the custody of Defendant Idaho Department of Corrections (the "Department"). Plaintiffs C.L.C. and Mary Cusack, the personal representative for Mr. Hernandez's estate, assert three causes of action: (1) violation of civil rights under 42 U.S.C. § 1983 against all of the named individual Defendants; (2) professional malpractice/wrongful death against Defendants Vicki Hansen, John/Jane Does, and the Department, and (3) negligence/wrongful death against Defendants Hansen, John/Jane Does, and the Department. Compl. (Dkt. 1).

Pending before the Court is Defendants' Partial Motion to Dismiss (Dkt. 4), seeking (1) to dismiss Plaintiffs' state law claims (Counts Two and Three) for failure to post a bond, *see*

**MEMORANDUM DECISION & ORDER - 1**

Idaho Code Section 6-610,[1] and (2) for the Court to strike Plaintiffs' prayer for non-economic and punitive damages.  Also pending is Plaintiffs' Motion to Waive or Set Bond and to Appoint Guardian ad Litem for Plaintiff C.L.C., a minor. (Dkt. 8).

## PRELIMINARY MATTER -APPOINTMENT OF GUARDIAN

Defendants do not oppose the appointment of a guardian ad litem, but do oppose the motion to waive bond as untimely. (Dkts. 13 & 14).

Plaintiffs' counsel requests that the Court appoint as guardian Mary Cusack, an attorney who is the named plaintiff in this action, and the personal representative of the Scott Hernandez estate.  Federal Rule of Civil Procedure 17(c)(2) provides that a "minor . . . who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem," and that "[t]he court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action."

Although there is no objection to the request, there is little to no information in the record about Ms. Cusack's qualifications and her willingness to serve as guardian for C.L.C.  The Court must, however, make some independent scrutiny as to the appropriateness of the requested appointment, and the qualifications of the person proposed to act as Guardian to fulfill those responsibilities.  Accordingly, the Court will reserve ruling on the request to appoint Mary additional information requested by the Court at the hearing on this matter.[2]

---

[1] As the Department acknowledges, the failure to post a bond does not bar a § 1983 action against the individual officers named as defendants in this case.  Accordingly, it has not asked to dismiss Plaintiffs' first cause of action (under 42 U.S.C. ¶ 1983), only the second and third causes of action.  *See* Defs.' Mem., p. 3 (Dkt. 4-1).

[2] The Court has received Plaintiffs' notice that Ms. Cusack is not available to provide the requested information until early March. (Dkt. 25).  The deadline for the supplemental information has been set accordingly.

**MEMORANDUM DECISION & ORDER - 2**

BACKGROUND

According to Plaintiffs' Complaint, Mr. Hernandez had a documented history of mental illness, suicide attempts, and suicide ideation in his clinical record and Department file before he committed suicide. Compl. ¶ 20. Plaintiffs contend that Defendant Hansen and the Defendant Does knew or should have known of Mr. Hernandez's suicidal tendencies or mental illness, yet let Mr. Hernandez remain in his cell without adequate supervision, with tools or implements they knew or reasonably should have known could be used for suicide, and did so knowing that other inmates were threatening him and verbally assaulting him. Compl. ¶¶ 22, 25.

In connection with the state law claims in Counts Two and Three, Plaintiffs allege that Defendant Hansen, a resident mental health clinician with the Department, and the Doe Defendants, breached their duties to provide reasonable mental health treatment to Mr. Hernandez, and to refer him to an appropriate care provider. Compl. ¶¶ 39-41. Plaintiffs also assert that the Department is liable under the doctrine of respondeat superior and the Idaho Tort Claims Act. Compl. ¶ 49.

DISCUSSION

A.   **Standards of Law**

As Plaintiffs point out, the Ninth Circuit Court of Appeals recently ruled that Federal Rule of Civil Procedure 12(f) "does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 975 (9th Cir. 2010). However, such an argument appears to be the basis for Defendants' motion to strike in the instant case. The Court addressed this issue during oral argument and counsel for both sides agreed that the Court could properly consider the motion to strike certain damages from the Complaint as a Rule 12(b)(6) motion to dismiss. Indeed, both

**MEMORANDUM DECISION & ORDER - 3**

parties fully briefed the issue of whether certain damages are available to Plaintiffs as a matter of law, and were allowed to file supplemental briefs on the issue.  Therefore, the Court will consider Defendants' motion under Rule 12(b)(6), which also is the basis for their requested dismissal for failure to post a bond.

A Rule 12(b)(6) motion to dismiss tests the threshold sufficiency of a plaintiff's claim for relief.  The relevant inquiry is whether the plaintiff's allegations are sufficient under Rule 8(a), which requires that the plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When reviewing a motion to dismiss, the court must accept as true all non-conclusory, factual (not legal) allegations made in the complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009); *Erickson v. Pardus*, 551 U.S. 89 (2007), and draw all reasonable inferences in favor of the plaintiff, *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).  In addition, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555.  In sum, dismissal may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

**MEMORANDUM DECISION & ORDER - 4**

As a general rule, the Court may not consider any evidence contained outside the pleadings without converting the motion to one for summary judgment.  *See* Fed. R. Civ. P. 12(b); *United States v. Ritchie*, 342 F.3d 903, 907–908 (9th Cir. 2003).  "A court may, however, consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment."  *Id.* at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[2] (3d ed.1999)).

**B.     Failure to Post a Bond**

Idaho Code Section 6-610 requires a plaintiff to post a bond "[b]efore any civil action may be filed against any law enforcement officer . . . when such action arises out of, or in the course of the performance of his duty . . . ."  This is referred to as "a condition precedent" and requires that the judge "shall dismiss the case" when the defendant "excepts to . . . the failure to post a bond under this section," which they have done in this case.  Idaho Code § 6-610(5).

Plaintiffs' Complaint, filed on June 30, 2011, includes two state law claims that require such a bond.  Defendants' Motion for Partial Dismissal seeks dismissal of the state law claims for Plaintiffs' failure to post a bond.  On September 23, 2011, after Defendants moved for dismissal, Plaintiffs requested that the bond be waived or a bond amount set.

     **1.     "Law Enforcement Officer" Defined**

Plaintiffs argue that Defendants John or Jane Doe #11 and Vicki Hansen should not be considered "law enforcement officers" under Section 6-610 "because they are professional medical or counseling staff rendering services to inmates, rather than personnel whose primary purpose is enforcing criminal laws."  Pls.' Mem. Resp., p. 4 (Dkt. 7).  Plaintiffs provided no case

**MEMORANDUM DECISION & ORDER - 5**

support for this interpretation, , nor has the Court found authority discussing the limits of "law enforcement officers" under the statute. In response, Defendants contend that the statute defines all of the named individual officers, including Hansen, as law enforcement officers.

In making their argument, Plaintiffs focus on the duties of Vicki Hansen and other health care professionals, duties which they contend are far more akin to medical providers than to law enforcement officials. However, the statute contains three categories of individuals who fall within the bond protection: (1) "any court personnel, sheriff, constable, peace officer, state police officer, correctional, probation or parole official, prosecuting attorney, city attorney, attorney general, or their employees or agents"; (2) "any other person charged with the duty of enforcement of the criminal, traffic or penal laws of this state"; or (3) "any other law enforcement personnel or peace officer as defined in chapter 51, title 19, Idaho Code."[3] Idaho

---

[3] As a corollary, Idaho Code Section 19-5101 provides the following definitions:

> (b) "County detention officer" means an employee in a county jail who is responsible for the safety, care, protection, and monitoring of county jail inmates.
>
> (c) "Law enforcement" means any and all activities pertaining to crime prevention or reduction and law enforcement, including police, courts, prosecution, corrections, probation, rehabilitation, and juvenile delinquency.
>
> (d) "Peace officer" means any employee of a police or law enforcement agency which is a part of or administered by the state or any political subdivision thereof and whose duties include and primarily consist of the prevention and detection of crime and the enforcement of penal, traffic or highway laws of this state or any political subdivision. "Peace officer" also means an employee of a police or law enforcement agency of a federally recognized Indian tribe who has satisfactorily completed the peace officer standards and training academy and has been deputized by a sheriff of a county or a chief of police of a city of the state of Idaho.

**MEMORANDUM DECISION & ORDER - 6**

Code § 6-610(1).  Plaintiffs allege that Defendant Hansen is a Department employee.  *See* Compl., ¶¶ 12-13.  If, as alleged, Ms. Hansen and other health care staff are correctional officials or employees of correctional officials, then they fall within category one because their positions specifically bring them within the ambit of the statute, regardless of whether or to what degree their actual duties involve enforcing criminal or penal laws.  Accordingly, the definition of "law enforcement officials" applies to all of the named individual Defendants in this case.

      2.      **Mandatory Dismissal for Failure to Post a Bond**

The Idaho Supreme Court gives a strict reading to the bond requirement of Section 6-610, even most recently upholding a trial court's dismissal of claims against a law enforcement officer because the plaintiff initiated suit before posting the bond required by Idaho Code Section 6–610.  *Allied Bail Bonds, Inc. v. County of Kootenai*, 258 P.3d 340, 346 (Idaho 2011).  In *Allied*, the plaintiff filed its bond one day after filing its complaint.  *Id.* at 345.  The Idaho Supreme Court held "that I.C. § 6–610(2) *plainly requires* a plaintiff to post bond before it initiates suit against a law enforcement officer, and also that I.C. §§ 6–610(4) and 6–610(5) permit an objection and dismissal where a plaintiff fails to do so."  *Id.* (emphasis added). Federal judges in the District of Idaho, applying Idaho state law prior to the *Allied* decision, have dismissed state law claims for failure to post a bond.  *See, e.g.*, *Chaffin v. Shoshone County*, No. CV03-455-N-MHW, Dkt. 60, pp. 4-5 (D. Idaho Dec. 5, 2005); *Lewis v. City of Nampa*, CV04-502-S-EJL, Dkt. 57, p. 10 (D. Idaho Feb. 8, 2006).

Plaintiffs argue, however, that the portion of Section 6-610 governing the *timing* of when the bond amount issue is brought before, and decided by, the federal court, is not substantive, but is merely a procedural rule conflicting with the Federal Rules of Civil Procedure.  Plaintiffs assert that Section 6-610's requirement that plaintiffs post a bond "[*b*]*efor*e any civil action may

**MEMORANDUM DECISION & ORDER - 7**

be filed against any law enforcement officer" conflicts with Federal Rule of Civil Procedure 18(a) ("Rule 18(a)"), which allows a plaintiff to join as many claims as it has against an opposing party in a complaint. In short, Plaintiffs submit that Idaho law does not govern the *timing* of when the security bond should be applied because that is a procedural matter left to federal law under the principles of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).[4]

Plaintiffs further argue that requiring a bond determination before a complaint may be filed in federal court conflicts with Rule 18(a) because the bond requirement prevents a plaintiff from joining a state claim with a federal claim. However, as Defendants point out, Idaho Rule of Civil Procedure is substantially similar to its federal counterpart.[5] Yet, litigants in Idaho state court have managed to initiate suits by first meeting the bond requirement. Although the timing of the required bond posting presents practical inconveniences, the bond requirement does not prevent the filing of an action; rather, it changes the order in which filings are made in court.[6]

---

[4] Plaintiffs do not dispute that a state law requiring a bond to secure diligent prosecution of claims against law enforcement officers is a substantive provision.

[5] Idaho Rule of Civil Procedure 18(a) provides that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." Federal Rule of Civil Procedure 18(a) states: "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."

[6] The Idaho Supreme Court has addressed concerns with requiring that a bond amount be fixed before "filing the suit-initiating complaint", noting that in a prior case it had acknowledged an "apparently sizeable jurisdictional problem, because the process requires a court to set the bond's value before the court gains jurisdiction over the case." *Allied Bail Bonds, Inc. v. County of Kootenai*, 258 P.3d 340, 346 (Idaho 2011) (discussing *Rogers v. State*, 572 P.2d 176 (Idaho 1977) (internal quotation marks omitted)). The Court explained that "[t]o overcome the 'jurisdictional problem' . . . a plaintiff may invoke the jurisdiction of a district court by filing with the court, located in the county where the law enforcement officer performs his or her official duties, a petition requesting an order fixing the amount of bond." *Id.* Cumbersome? Yes, it is. Sound public policy? A question for the legislature. Impossible to meet? No.

**MEMORANDUM DECISION & ORDER - 8**

Section 6-610 does not conflict with Rule 18 because the bond statute does not address which claims may be or must be joined in a single action, but instead imposes a condition precedent to filing an action that involves certain types of defendants, analogous to tort claim notice requirements. Because there is no conflict, there is no federal rule that applies to the issue at hand.

Justice Stevens's concurring opinion in *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 130 S.Ct. 1431, 1448-50 (2010) explains additional considerations:

> A "state procedural rule, though undeniably 'procedural' in the ordinary sense of the term," may exist "to influence substantive outcomes," *S.A. Healy Co. v. Milwaukee Metropolitan Sewerage Dist.*, 60 F.3d 305, 310 (7th Cir. 1995) (Posner, J.), and may in some instances become so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy. Such laws, for example, *may be seemingly procedural rules that make it significantly more difficult to bring or to prove a claim*, thus serving to limit the scope of that claim. *See, e.g., Cohen*, 337 U.S. at 555, 69 S.Ct. 1221 (state "procedure" that required plaintiffs to post bond before suing); *Guaranty Trust Co.*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (*state statute of limitations*).

*Id.* (Stevens, J., concurring in part and concurring in judgment) (emphasis added). Idaho's bond requirement "ensure[s] diligent prosecution of a civil action brought against a law enforcement officer, and in the event judgment is entered against the plaintiff or petitioner, for the payment to the defendant or respondent of all costs and expenses that may be awarded against the plaintiff or petitioner, including an award of reasonable attorney's fees as determined by the court." Idaho Code § 6-610(2). Although there may be other ways to ensure these matters, Idaho has chosen to do so by creating a condition precedent to bringing suit, the posting of a bond. Thus, it is not only the posting of the bond, but the timing of that bond that is substantive in nature.

Even considering "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws," those goals favor Defendants' position.

**MEMORANDUM DECISION & ORDER - 9**

*Hanna v. Plumer*, 380 U.S. 460, 468 (1965). In suits against law enforcement officials for state law claims, Idaho courts administer the bond requirement in a way that results in dismissal if a bond is not posted prior to commencement of an action. *See, e.g.*, *Allied Bail Bonds*, 258 P.3d at 346. Providing for a different rule in federal court would result in different outcomes in federal and state courts, thereby encouraging forum-shopping.

C.  **Motion to Waive or Post Bond**

Plaintiffs argue alternatively that dismissal is not appropriate because the real party in interest is indigent and the statute of limitations has not expired so there is no prejudice to Defendants if a bond amount is set and bond posted after the filing of the case.[7] Under Idaho law, a court "may authorize the commencement . . . of any action without prepayment of fees, costs or security," if it finds, after informal inquiry, that the plaintiff is indigent. Idaho Code § 31-3220(2). Defendants argue that this determination must be made at the time an action is commenced and cannot be retroactively applied. More than one decision in the District of Idaho has ruled otherwise. For instance, in *Moore v. Peck*, the court allowed plaintiffs the opportunity to file an affidavit showing indigency under Section 31-3220(2) even though they had "neither posted a bond nor filed an affidavit stating that they are indigent." *Moore v. Peck*, No. CV06-215-E-BLW, 2008 WL 508425, *8-9 (D.Idaho Feb. 19, 2008). *See also Blackhawk v. City of Chubbuck*, No. CV-04-629-E-BLW (D. Idaho Nov. 24, 2006) (determining that a properly-filed affidavit under Idaho Code Section 31-3220 could establish indigency that would result in the Court waiving the bonding requirement and "[h]ad the Court denied defendants'

---

[7] Plaintiffs also have filed a motion asking the Court to waive the bond requirement or, in the alternative, set a bond at this time.

**MEMORANDUM DECISION & ORDER - 10**

summary judgment, the Court would have given plaintiffs ten days to submit the proper affidavits under Idaho Code § 31-3220"); *J.H. v. Jefferson County*, 2007 WL 219996, *5 (D.Idaho 2007) (discussing *Blackhawk*).

However, these decisions were issued before the Idaho Supreme Court's decision in *Allied*. Additionally, other judges in this District have granted defense motions raising the "failure to provide the required bond" argument, without allowing plaintiffs to file affidavits seeking relief from the bond under Idaho Code §31-3220. *See, e.g.*, *Chaffin*, No. CV03-455-N-MHW, Dkt. 60, p. 5 (D. Idaho Dec. 5, 2005) (denying request to amend and explaining that because of "the express statutory language" in Section 6-610, "the Court is constrained from allowing Plaintiffs the opportunity to cure the defect of having previously failed to failed a bond by allowing them to now amend their Complaint"); *McCarthy v. Kootenai County*, No. CV08-294-N-EJL, 2009 WL 3823106, *8-9 (D.Idaho Nov. 12, 2009) (explaining that because plaintiffs had "not filed any affidavits in support of a request to waive the bond requirement . . . the facts of [the] case [did] not support a finding that the bond requirement of § 6-610 should be waived"); *Lewis v. City of Nampa, Idaho*, 2006 WL 318812, *7 (D.Idaho 2006) (explaining that the plaintiff failed to comply with the mandatory bond requirements when suing peace officers under Idaho Code 6-610).

Moreover, some Idaho state court decisions indicate that a request for bond waiver should be made prior to the filing of a complaint. *See Beehler v. Fremont County*, 182 P.3d 713, 717 (Idaho Ct. App. 2008) (explaining that "[i]f the Beehlers were unable to afford the security bond as they claim, they could have availed themselves of I.C. § 31–3220 in order to request a waiver of the section 6–610 bond requirement *prior to filing their complaint*") (emphasis added); *Athay*

**MEMORANDUM DECISION & ORDER - 11**

*v. Stacey*, 196 P.3d 325, 331 (Idaho 2008) (explaining that the "Plaintiff did not seek relief from the bond requirement pursuant to Idaho Code § 31–3220" and "[h]is failure to do so does not constitute a ground for avoiding the consequences of not complying with Idaho Code § 6–610") (emphasis added).

In this case, C.L.C's mother and current legal guardian submitted a sworn statement adequately asserting C.L.C's indigency, and her affidavit complies with the requirements of Idaho Code Section 31-3220. However, it was filed months after the Complaint was filed. *See* Affidavit of Brittany Caldwell. In *Allied*, the case was dismissed even though the bond was filed one day after the complaint. Considering the *Allied* decision and this Court's ruling that the timing of the bond filing is part of the substantive structure of Idaho's bond requirement statute, a bond posting or a favorable decision on a request to waive the bond must be made prior to filing the lawsuit as a matter of state law. Hence, the Court will dismiss the state law claims for failure to post a bond; however, the dismissal is without prejudice.

**D.    Motion to Strike Plaintiffs' Prayer for Recovery of Mr. Hernandez's Non-Economic Damages**

Defendants ask the Court to strike Plaintiffs' claim for damages resulting from Mr. Hernandez's pain and suffering. Defs.' Supp. Reply, p. 2; *see also* Compl. ¶ 56. In Idaho, "pain and suffering are personal to the deceased and are not damages suffered by the survivors, [therefore] an action for pain and suffering under I.C. § 5–311 does not survive death." *Vulk v. Haley*, 112 Idaho 855, 858 (Idaho 1987). Plaintiffs concede that any non-economic damages resulting from their state law claims (Counts Two and Three) do not survive Mr. Hernandez's death, but argue that their claim for non-economic damages resulting from the federal constitutional § 1983 violation alleged in Count One survives. Pls.' Mem. Resp., p. 3 (Dkt. 7).

MEMORANDUM DECISION & ORDER - 12

The Idaho Supreme Court has decided that a § 1983 case of action does not survive in Idaho because § 1983 "is a personal cause of action, actionable only by persons whose civil rights have been violated." *Evans v. Twin Falls Cty*, 796 P.2d 87 (Idaho 1990).  However, a state court's interpretation of *federal* law does not bind a federal court, "though it may persuade [the court] to reach a similar result."  *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th Cir. 1984).

The text of § 1983 alone does not answer the question.  Reference to § 1988 of Title 42 is also required.  That section reads, in relevant part:

> The jurisdiction in civil . . . matters conferred on the district courts by (the Civil Rights Acts) . . ., for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies . . ., the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil . . . cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . .

Congress intended this section to "complement the various acts" which create federal causes of action for violations of federal civil rights.  *Moore v. Alameda County*, 411 U.S. 693, 703 (1973).

Chief Judge Winmill of this District recently considered whether a decedent's § 1983 claim survives her death, and ruled that it did survive. *See Van Orden v. Caribou County, et al.*, No. 4:10-CV385-BLW (Mar. 4, 2011).  The relevant inquiry applied by the District Court in *Van Orden* involved consideration of (1) whether the issue before the court is addressed by federal law (here, the survivability of § 1983 actions is not addressed by a federal statute); (2) the law of the forum state, (Idaho has no survivor statute and claims abate on a decedent's death); and (3) whether the state law conflicts with the purposes of § 1983.  Although other decisions from this

MEMORANDUM DECISION & ORDER - 13

district have examined just the first two stages[8], the *Van Orden* decision goes on to consider the third. The first two stages of the inquiry here are identical to the analysis in *Van Orden*, and the third stage—that of whether state law conflicts with the purpose of § 1983—is most relevant. In addressing this stage, the court in *Van Orden* explained that a law precluding a civil rights action when the wrongful conduct causes death undermines the purpose of § 1983, to provide a remedy for those injured by constitutional violations and to deter constitutional violations. *Id.* (citing *Brazier v. Cherry*, 293 F.2d 401 (5th Cir. 1961); *Bell v. Milwaukee*, 746 F.2d 1205 (7th Cir. 1984) *overruled on other grounds* (holding that the Constitution does not allow parents to recover in § 1983 actions for loss of society and companionship); *Berry v. City of Muskogee*, 900 F.2d 1489, 1501 (10th Cir. 1990)).[9] This Court agrees that Idaho's lack of a survivor statute is inconsistent with the strong policy embodied in § 1983 to provide a remedy for constitutional violations and to deter such conduct.

---

[8] *See, e.g., Anderson v. Correctional Med. Servs.*, No. 1:02-CV-155-LMB (D. Idaho 2005) (finding that Idaho law did not allow the action to survive, but noting that "[t]his seems to me to be contrary to the policy behind the civil rights statute"); *Huber v. Blades*, No. 1:05-CV-206-MHW (D. Idaho 2006) (ruling on a motion to dismiss that was unopposed and not engaging in third step of the analysis). More recently, a District Court determined that a § 1983 claim did not survive the death of the plaintiff's wife under Idaho law. *Bach v. Idaho State Bd. of Med., et al.*, CV10-548-BLW (D. Idaho Jan. 20, 2012). However, the court in *Bach* found that the plaintiff did not sufficiently allege deliberate indifference and it did not engage in the third step of the analysis under the circumstances that case presented.

[9] The Fifth Circuit in *Brazier* noted that (in contrast to Idaho) since state law "provides both for survival of the claim which the decedent had for damages sustained during his lifetime as well as a right of recovery to his surviving widow . . . we need not differentiate between the two types of actions." 293 F.2d at 409. However, the court went on to explain that "[t]o make the policy of the Civil Rights Statutes fully effectual, regard has to be taken of both classes of victims." *Id.* In commenting on the issue, the Fifth Circuit stated "Section 1988 declares that this need may be fulfilled if state law is available." *Id.* In this case, Idaho law is not available, that is, it does not provide for survival similar to the Georgia law. Thus, this Court must go beyond what the *Brazier* court determined.

**MEMORANDUM DECISION & ORDER - 14**

The United States Supreme Court's ruling in *Robertson v. Wegmann*, 436 U.S. 584 (1978) is instructive here. In that case, a man named Clay Shaw filed a civil rights action under 42 U.S.C. § 1983, but died from unrelated causes four years after filing the action and before trial commenced. *Id.* at 585. The question the Court considered was "whether the District Court was required to adopt as federal law a Louisiana survivorship statute, which would have caused [the] action to abate, or was free instead *to create a federal common-law rule*[10] allowing the action to survive." *Id.* (footnote and emphasis added). As the Court noted, "[r]esolution of this question turns on whether the state statute is 'inconsistent with the Constitution and laws of the United States.'" *Id.* (quoting 42 U.S.C. § 1988).[11]

The policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Id.* at 590-91. Defendants here argue that the "prevention of abuses of power" language incorporates only acts that are "contemplated and intentionally taken" and not constitutional deprivation caused by negligence, which Defendants argue is the basis for Plaintiffs' § 1983 claim here. Defs.' Supp. Reply. First, Plaintiffs' § 1983 claim alleges that Defendants acted with "deliberate indifference" and is not a standard negligence claim. *See* Compl., p. 5 (Dkt. 1). Additionally,

---

[10] "Aspects of § 1983 which are not governed by reference to state law are governed by federal rules conforming in general to common-law tort principles." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "[O]ver the centuries the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights. These rules, defining the elements of damages and the prerequisites for their recovery, provide the appropriate starting point for the inquiry under § 1983 as well." *Carey v. Piphus*, 435 U.S. 247, 257-258 (1978).

[11] The Supreme Court applied the Louisiana state law, explaining: "Despite the broad sweep of § 1983, we can find nothing in the statute or its underlying policies to indicate that a state law causing abatement of a particular action should invariably be ignored in favor of a rule of absolute survivorship." 436 U.S. at 590.

**MEMORANDUM DECISION & ORDER - 15**

neither *Robertson* nor the cases the opinion draws upon in discussing "abuses of power" sets forth a requirement that an *intentional* act occur before an abuse of power may be found. Moreover, Shaw's death was unrelated to the alleged constitutional violation, in stark contrast to the allegations of this case. Finally, the Court in *Robertson* was careful to paint exact corners around the limits of its decision:

> Our holding today is a *narrow one*, limited to situations in which no claim is made that state law generally is inhospitable to survival of § 1983 actions and in which the particular application of state survivorship law, while it may cause abatement of the action, has no independent adverse effect on the policies underlying § 1983. A different situation might well be presented, as the District Court noted, if state law "did not provide for survival of any tort actions," 391 F.Supp., at 1363, *or if it significantly restricted the types of actions that survive. Cf. Carey v. Piphus*, 435 U.S., at 258, 98 S.Ct., at 1049 (failure of common law to "recognize an analogous cause of action" is not sufficient reason to deny compensation to § 1983 plaintiff). *We intimate no view, moreover, about whether abatement based on state law could be allowed in a situation in which deprivation of federal rights caused death. See supra*, 1996, and n. 10; *cf. Brazier v. Cherry*, 293 F.2d 401 (CA5 1961) (deceased allegedly beaten to death by policemen; state survival law applied in favor of his widow and estate).

436 U.S. at 594 (emphases added).[12]  Here, the alleged deprivation of federal rights *are* what Plaintiffs assert caused Mr. Hernandez's death.

---

[12] At the hearing, defense counsel relied on the following statement in a Ninth Circuit Court of Appeals' decision: "It is undisputed that survival actions are permitted under § 1983 if authorized by the applicable state law." *Byrd v. Guess*, 137 F.3d 1126, 1131 (9th Cir. 1998). That sentence of the *Byrd* case cited to another case, *Smith v. City of Fontana*, which contains a limitation similar to that noted by the *Robinson* court: "We express no view here as to whether the remedies authorized by California's survival statute, pecuniary and punitive damages but not damages for pain and suffering, are too limited to be 'consistent' with the Civil Rights Act's statutory scheme and whether federal law, therefore, provides an independent source of recovery for a broader array of damages." *Smith v. City of Fontana*, 818 F.2d 1411, 1416-17 (9th Cir. 1987) *overruled on other grounds by Hodgers–Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999). That is akin to the issue taken up by Judge Winmill in the *Van Orden* case, an issue that has been left undecided in some of the cases upon which Defendants rely.

**MEMORANDUM DECISION & ORDER - 16**

While the Louisiana statute applied in *Robertson* allowed the decedent's § 1983 claim to survive in favor of a spouse, children, parents, or siblings,[13] Idaho has *no* survivor statute; thus, a decedent's claims do not survive at all (even though Idaho allows certain relatives of a deceased to bring independent claims on their own behalf). As Judge Winmill said in *Van Orden*, "Idaho's lack of a survivor statute conflicts with § 1983's purposes of providing a remedy for, and deterring[,] constitutional violations." *Van Orden*, 2011 WL 841438, at *4. Accordingly, this Court holds that Plaintiffs may pursue a § 1983 claim on behalf of Mr. Hernandez.

Having ruled that the § 1983 claim may be maintained, the Court finds no reason to limit the damages recoverable for that claim.[14] *See, e.g.*, *McGlurg v. Maricopa Cty*, No. CV09-1604-PHX-MHB, 2011 WL 4434029 (D. Ariz. Sept. 23, 2011) (concluding that "application of Arizona's survival statute and its elimination of pain and suffering damages where death is alleged" is contrary to the purpose of § 1983 and applying "*a federal remedy* that permits recovery of such damages") (emphasis added); *Kaady v. City of Sandy*, CV06-1269-PK, 2008 WL 5111101 (D. Or. Nov. 26, 2008) (explaining that Oregon's survival statute "substantially limits the type and amount of damages that are recoverable in § 1983 claims where the constitutional violation causes the death of the victim" and concluding that it "is inconsistent with the compensation and deterrence policies that Congress intended § 1983 to serve").[15] "Rights,

---

[13] Under Louisiana law, an action like Shaw's would survive only in favor of a spouse, children, parents, or siblings and "since no person with the requisite relationship to Shaw was alive at the time of his death, his action would have abated had state law been adopted as the federal rule." *Robertson*, 436 U.S. at 587.

[14] Defendants requested that the Court dismiss Plaintiffs' claim for pain and suffering, and not the entire § 1983 action, but the Court's ruling on the damages issue rests on considerations related to the Plaintiffs' ability to maintain a § 1983 action at all on behalf of the deceased person.

[15] Courts in the Southern, Central, and Northern Districts of California "have opted not to apply" a California state "limitation on damages for pain, suffering, or disfigurement, finding

**MEMORANDUM DECISION & ORDER - 17**

constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect." *Carey v. Piphus*, 435 U.S. 247, 253-55 (1978) (granting certiorari "to consider whether, in an action under § 1983 for the deprivation of procedural due process, a plaintiff must prove that he actually was injured by the deprivation before he may recover substantial 'nonpunitive' damages" and commenting that "lower federal courts appear generally to agree that damages awards under § 1983 should be determined by the compensation principle").[16]

Compensatory damages under § 1983 "may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering." *Adams v. CCA,* 2011 WL 2909877, *6 (D.Idaho 2011) (citations and internal quotation marks omitted).[17] Accordingly, Defendants' motion to strike or dismiss Plaintiffs' claim for recovery of non-economic damages under §1983, is denied.

---

it inconsistent with the purposes of § 1983." *Duenez v. City of Manteca*, No. CIV S-11-1820, 2011 WL 5118912 *8 (E.D. Cal. Oct. 27, 2011).

[16] *See Sullivan v. Little Hunting Park, Inc*., 396 U.S. 229, 239-240 (1969) ("This means as we read § 1988, that both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes. . . . The rule of damages, whether drawn from federal or state sources, is a federal rule responsive to the need whenever a federal right is impaired. We do not explore the problem further, as the issue of damages was not litigated below.").

[17] *See also Sullivan*, 396 U.S. at 238-39 (quoting *Bell v. Hood*, 327 U.S. 678) (internal quotation marks omitted) ("Where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief. And it is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done."). *But see Mahach-Watkins v. Depee*, 593 F.3d 1054, 1060 (9th Cir. 2010) (assuming in a case arising in California, without deciding, "that as a matter of law compensatory damages were not available to the estate on the § 1983 excessive force claim").

**MEMORANDUM DECISION & ORDER - 18**

### E. Plaintiffs' Prayer for Punitive Damages

Plaintiffs concede in their briefing that punitive damages are not available for their two law state claims, Pls.' Mem. Resp., p. 3 (Dkt. 7), and Plaintiffs' counsel confirmed this at the hearing. Accordingly, the punitive damages request, as it relates to these Counts Two and Three, will be dismissed.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendants' Partial Motion to Dismiss (Dkt. 4) is GRANTED, in part, and DENIED, in part. Plaintiffs' request for punitive damages and any requests for non-economic damages suffered by Mr. Hernandez in relation to Plaintiffs' state law claims (Counts Two and Three) are hereby dismissed. Counts Two and Three of Plaintiffs' Complaint are dismissed for failure to post a bond, but without prejudice. Defendants' Motion is DENIED in all other respects.

2) A final order on Plaintiffs' Motion to Waive or Set Bond and to Appoint Guardian ad Litem (Dkt. 8), to the extent it seeks appointment of Mary Cusack as guardian ad litem for Plaintiff C.L.C., is deferred at this time. As discussed at the January 17, 2012 hearing, Plaintiffs' counsel may submit more information in support of their request to appoint Ms. Cusack as guardian, along with a proposed order. Any supplemental information to support the guardianship request shall be filed with the Court on or before **March 14, 2012.**

3) That portion of Plaintiffs' Motion to Waive or Set Bond and to Appoint Guardian ad Litem (Dkt. 8) that seeks to waive the bond required by Idaho Code Section 6-610 or set a bond is DENIED, but without prejudice to reconsideration if Plaintiffs choose to refile such claims and either obtain a bond or an order waiving the bond before doing so.

4) A telephone scheduling conference is hereby set for **March 7, 2012 at 1:15 p.m. (MST)**. Plaintiffs' counsel shall initiate the conference call and connect opposing counsel and the Court at (208)334-1495. On or before **February 29, 2012**, counsel shall file a joint litigation plan proposing case management deadlines. A copy of the litigation plan is available at http://www.id.uscourts.gov/forms-dc.htm.



DATED: **February 15, 2012.**

Honorable Ronald E. Bush
U. S. Magistrate Judge

MEMORANDUM DECISION & ORDER - 20